This is Zazzle. I'd like to take the court back in time to 1999 when dot-com was a sexy word, the dot-com bubble had yet to burst, and Robert Kronenberger, the president of American Needle, was struggling with a challenge. He had selling customized caps, headwear. He created a— The patent doesn't claim displaying in 3D, right? It claims displaying online a three-dimensional shape, Your Honor. Where in the patent does it state the display is a 3D model of a cap? Column 4, line 35, and I'm quoting, a method for facilitating sale to a potential customer of an object over a computer network, said object having a predetermined three-dimensional shape, end quote. Yeah. Are you going to answer my question? That is the answer to Your Honor's question. Okay. And so back in time, 1999, Robert Kronenberger struggled with this challenge. How do I— Counselor, let me ask you a question. You're saying that the 980 patent, and I'm quoting here, is that it's directed to a groundbreaking method of electronic commerce. Correct. It sounds like your introductory paragraphs are setting us up, that groundbreaking in electronic commerce, and it's directed to a concrete process that transforms data into bits of merchandise that you can touch, feel, and wear to your exact taste. It sounds to me you're almost claiming the internet. No, Your Honor. And our argument really echoes the PTO's findings on this, distinguishing over Koston, which is a reference asserted against this patent, in examination that facilitated sales online in two-dimensional format. And so the claim here, Your Honors, is facilitating sales of three-dimensional objects and creating the experience for the user in computer networks of viewing the three-dimensional shape of the object. Now— Where does that say that? I mean, you pointed us to the first phrase in response to Jadwalek's comment. Where in the claim, which limitation is about viewing the object? Is it the fourth? You really have to stay within the claim language itself all throughout. Now I read the preamble, which is limiting. It's limiting to a computer network. It's limiting to a three-dimensional shape. The PTO determined that this patent was allowable over Koston based on that limitation. And so those two points have to be considered throughout reading the claim. And so, and I'm happy to take, Your Honors, through the claim language. The limiting aspect of the preamble, quote, three-dimensional shape. Well, I'm having a difficulty just getting past the preamble, which you say is limiting. Yes. And you say it's limiting to a computer network. I mean, that's the internet. You limit it. You say the preamble of the claims limit this to computer, and then you go on with objects having three-dimensional shapes. And it seems to me that there's an awful lot of objects on the internet and on computers that have three-dimensional shapes. The difference is that yours are baseball caps. Respectfully, Your Honor, that's why we have to transport back in time. And the PTO... Let's transport back to the claims. Okay. Yeah, that's fair.  Yeah, that's fair. All right. And that's fair, and this claim, Claim 1, Representative, was allowed over Koston, an e-commerce method to sell denim jeans customized online. Now, the PTO determined that this form of e-commerce is novel, non-obvious. I understand. I'm hearing your answer, but I'm not sure how it's probative or responsive to what Judge Reyna said. I mean, every time we get a 101 case, by definition, the patent is already issued by the Patent Office. So the Patent Office, at least, concluded that it was non-obvious. So you might want to keep telling us that and going back to what the Patent Office concluded, but I would suggest that you might want to focus on the claims and on what we're dealing with here, which is the abstract idea issue. Okay. And my response would be to then look at this claim with respect to DDR Holdings, for example. DDR Holdings upheld as valid under 101 a patent claim with generic computing elements as we have here, and the gist of the Court's question so far is that there's some skepticism about the generic nature of these components, and DDR Holdings holds that if you take generic computing elements and on computer networks solve a problem arising on computer networks, you clear step two of the Mayo analysis, and that's exactly what we have here. I think your takeaway from DDR is a little bit more sweeping than I would say it, because if you look at cases then, that doesn't map on to a number of cases that we've had where we've said DOPEPS must are under 101, that reference a computer network and are dealing with something that you're only dealing with on the computer, right? I mean, aren't there cases that go the other way that would dispel the proposition for which you cite DDR? No, Your Honor, and I think Bascom affirms the principle that I'm advancing here. What about internet patents? Isn't there a case that's cited repeatedly in the briefs? The internet patents case, active network. And I think that that decision is based on factual determination that you're dealing with a longstanding commercial problem not arising on computer networks, and so we fit within the ability to use generic computing components to fit together in an ordered combination a solution arising on computer networks. Internet patents, other cases that able counsel cites, all stand for the proposition that based on evidence, the court held this is a longstanding commercial practice that you just say do on a computer. That's not what we have here. Let me ask you a little housekeeping question. Yes. In your Roman numeral section two, starting at page 18 of your blue brief, you make a well-plaid facts argument. Tell me which facts, specific facts, you've alleged that the court explicitly says it's not construing in your favor. Because I couldn't find it in there. Okay. One, that the claim is directed to computer networks. Okay. I'm not talking about ultimate conclusions. I'm asking you about facts. I would have the same response, Your Honor. The claim language was ignored in this case. Rule 12, of course, says construe facts in the plaintiff's favor. We have a finding, a factual finding, at the outstart of this case that this method has been done for thousands of years. Not true. The patent office didn't find that. Our claim language says something quite different. And I'll quote it again. Said object having a predetermined, I'm sorry, a method for facilitating sale to a potential customer of an object over a computer network. End quote. The district court held as a factual matter, as a matter of law, that this has been going on for thousands of years. Maybe not thousands of years, but you're describing electronic commerce. You're claiming electronic commerce. I mean, you're standing here arguing that this is your claim. We are claiming a method of electronic commerce. No question about it. No, you're claiming facilitating a sale over a computer. A three-dimensional object. Yes, the shape of a three-dimensional object. Most things sold over the computer, not everything, intellectual property, for example, but most things sold over the computer are three-dimensional, are they not? Yes, but these questions are not the standard. We claim a transformational process. That's what we're before the court arguing. Their ability, for example, defendant does not reference that in their briefs, but we fit squarely within this court's teaching in the Bilski opinion on an information age transformation process. And the Abilie decision holding that x-ray data manipulated and transformed into images of bones and tissue is an information age transformation process. We fit right within that decision. I'm into my time. A 1982 decision by our court? A 1982 decision by your predecessor court that has been cited in not only the Bilski opinion, which the Supreme Court lauded in reversing as the machine and transformation test as being the only test, but lauded that opinion, signed on by eight judges of this court, the teachings of that opinion, laud Adelie as an information age transformation process, and that's exactly what this claim is. We're into your rebuttal. Why don't we save that and let's move to the other side. Thank you. Good morning, and may it please the court. As a baseball fan who grew up just outside the city of Chicago in this historic week, I think it's fair to acknowledge what American Needle as a company brought to baseball fans. And I think it's fair to acknowledge the historic perspective that counsel was addressing. Their briefs go even further back than 1999 to 1948 when they first offered to fans a baseball cap that was replicating the team caps that were worn. It's that historic perspective that actually leads to affirmance in this case, because that confirms that what they've tried to claim here is nothing more than automating a longstanding commercial practice. And in addition to the admissions that I think we just did. Sending out a catalog with a picture of the front, picture of the side, picture of the top, three dimensions on a flat page. Precisely, Your Honor. And all that the claims add to that are generic computer components that are used in their conventional way. And as this court and the Supreme Court have said any number of times, that does not amount to patent eligible subject matter. I want to point to just a couple of additional admissions that I think further support this conclusion. And those are found at page six of the reply brief. Where here they're discussing that offering various three dimensional objects for sale with various design elements, merchandisers have obviously done for hundreds of years. On the next page they then say, there's nothing wrong with the potential customer involved in the 980 patented method, picking and choosing among the design elements, and viewing how the chosen elements look on the surface of the three dimensional object. Again, these are American Needle's words, an act performed by humans down through the ages. There is nothing wrong with these mental steps. That's at page seven of the reply brief. Based on these admissions alone, I think we have everything we need to fall within this court's binding precedent. We have commercial activity that's been done well for hundreds of years, as they say. And we have mental steps. Under step one of Alice, there's simply nothing but an abstract idea that's here. Just to address a couple of additional points, it sounds as though the court fully understands most of what we put in our brief. With respect to the Abilie decision that was just discussed. What don't we understand? No, I think that you understood all of the points that we were trying to present in our briefs. I certainly hope so. But with respect to the Abilie decision, we were just pointed out that we didn't respond to this. That's because the test that was at issue in Abilie was overturned in Bilski, which was then later refined by the Supreme Court. But not only that, if you actually go back to the Abilie CCPA decision, the independent where the claims were written as broadly as just displaying a type of data that was calculated in a specific way, the CCPA held that was not enough. It was nothing more than an algorithm. It wasn't until you got to the dependent claim that required the data be a specific type, x-ray data, that was calculated with a specific type of hardware, a specific type of scanner that they found that there was patent-eligible subject matter. These claims are nowhere near the claims that were upheld in the Abilie decision. DDR, the same thing. I don't think that we're anywhere near that, neither with respect to the type of problem that was at issue, which was a very technical, Internet-only problem in DDR, nor with respect to the solution. The solution in DDR was, again, a technical solution. There was a specific type of hardware that was operating in a specific type of way. It was not just a generic solution that was offered, as it is here, displaying a perspective view. So final point is responsive to the question. We also don't think that there were any facts that were pointed out that were overlooked by the district court. The district court, as it said in its summary, if the question of patent eligibility comes down to the answers to legal questions, there are no facts to resolve. There's no need to look at the clear and convincing evidence. We believe that the district court was right in that conclusion, as well as the conclusion that these claims simply do not pass muster under 101. Let me ask you a question on your last point. Does a presumption of validity apply in Section 101? It certainly doesn't apply in cases like this, where it turns solely on questions of law, which is, you're looking at the scope or character of the claims. So 101 Inquiry can have a factual component? I believe that it could, but again, not in cases like this, and not in many cases where this court has been able to affirm judgments on the pleading or 12B6 motions. So in your view, if there is a factual component to the Section 101 analysis, what's the standard to review there, to the factual issue? Again, just to clarify, we don't believe that there are any factual issues in this case, and so the question is not really before the court. But hypothetically speaking, we have not seen any clear precedent that would outline what the standard of review should be. I think that something that's instructive is possibly what this court has done with indefiniteness law, which is to say, following the TEVA standard, that typically you can decide that as a question of law, and you don't need to answer the question of standard of review. But if it gets to the point that you do have a factual dispute, that then the raised standard of proof would apply. I think that the court said that in Sprint v. Cox Communication recently. Unless there are any further questions, I'll... Well, I have a comment. I just want to say that I think 108 years is quite long enough. Worth the wait, Your Honor. Thank you. Just two points, Your Honors. Picking up on Judge Reyna's question, it just can't be that some cases the presumption does not apply. We have a federal statute. It applies in all cases and controversies. Not just some cases and not this one. That simply cannot be the answer. I'll point to the Microsoft case as clearly setting forth that the presumption applies. But we don't proceed in this court on that basis. We don't need that. Because this is a valid process under Section 101 on substance. And that's what we rely on. And counsel's argument with purported admissions in her reply brief are taken in context of us relying on Judge Dyke's opinion where he supports his analysis with the Abilee case, which defendant does not cite. And it explains it in this court now. But take that for what it's worth. But please visit Judge Dyke's analysis for the principle that... In which case are you referring to now? I don't have it in mind right now. Forgive me. CyberSource, 654 F3rd at 1373. And Judge Dyke relies on the Abilee case for the principle that method steps performed in the head are perfectly allowable under Section 101. CyberSource found the claims at issue not patentable. That's correct, Your Honor. Thank you. Thank you. Both sides in the case are submitted.